# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | | |
|---|---|---|
| ASHLEY NELSEN, ROODY JASMIN, JOELLYN WILLIAMS, Individually and as representatives of a class of similarly situated persons, | ) ) ) ) ) | Case No. 4:18-cv-00115-SMR-SBJ |
| | ) | Hon. Stephanie M. Rose |
| Plaintiff, | ) ) | **DEFENDANTS' BRIEF IN** |
| v. | ) ) | **SUPPORT OF THEIR MOTION TO DISMISS** |
| | ) | |
| PRINCIPAL GLOBAL INVESTORS TRUST COMPANY; DELAWARE CHARTER GUARANTEE & TRUST COMPANY d/b/a PRINCIPAL TRUST COMPANY; PRINCIPAL GLOBAL INVESTORS, LLC; and PRINCIPAL MANAGEMENT CORPORATION, | ) ) ) ) ) ) ) ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| Defendants. | ) | |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 2

ARGUMENT .................................................................................................. 7

I.    Plaintiffs Have Not Alleged That The Overall Fee Structure Of The Principal CITs Was Too Expensive Or That The Principal CITs Underperformed ........................................... 8

II.    Defendants Were Not Acting As ERISA Fiduciaries Either In The Product-Design Selection Of The Underlying Funds For The Principal CITs Or In The Monitoring And Approval Of The Principal CITs' Fees. ............................................................................ 10

III.    Even If Defendants Were Acting As Fiduciaries, Plaintiffs' Bare Allegations That Cheaper Alternative Investments Were Available Are Insufficient To State A Plausible ERISA Breach Of Fiduciary Duty Claim. ........................................................................ 12

    A.    Plaintiffs' Allegations That Cheaper Index Funds Were Available Do Not State A Plausible Claim. ........................................................................................... 13

B.      Plaintiffs' Allegations That Cheaper Annuity Separate Accounts Were Available Do Not State A Plausible Claim. ........................................................................ 18

C.      Plaintiffs' Allegations That Cheaper Share Classes Were Available Do Not State A Plausible Claim. ............................................................................................. 20

D.      Plaintiffs Cannot Circumvent *Braden*'s Pleading Requirements By Also Alleging A Breach Of The Duty Of Loyalty. .................................................................. 22

IV.     Plaintiffs Have Not Plausibly Alleged Loss Causation. .................................................... 23

V.      Plaintiffs' Claim Is At Least Partially Barred By The Applicable Statute of Limitations. ................................................................................................................................ 24

CONCLUSION .................................................................................................................... 24

## <u>INTRODUCTION</u>

Plaintiffs are employees who participate in 401(k) retirement plans sponsored by their employers.  Defendants are financial services companies who operate a series of "target date fund" products that were offered to and selected by the retirement plans, and that Plaintiffs chose to invest in.  The target date funds are structured as collective investment trusts ("CITs"), which in turn invest in a diverse mix of underlying investment funds.   That mix of underlying investments becomes more conservative over time as participants' anticipated retirement dates approach.   Each of the target date funds that Plaintiffs chose to invest in substantially outperformed their investment benchmarks during Plaintiffs' proposed class period, resulting in returns of between 0.59% and 1.39% higher per year than their respective Morningstar benchmarks.  Incredibly, however, Defendants' successful operation of those target date funds has now been contorted into a lawsuit brought on behalf of the very people whose retirement plan savings substantially benefited from the success of the target date funds.

Plaintiffs' Complaint recites only one count:  breach of the fiduciary duties of loyalty and prudence under section 404 of the Employee Retirement Income Security Act ("ERISA").  The purported basis of Plaintiffs' sole count is that Defendants failed, in some instances, to use the cheapest possible investments (and, in even fewer instances, used investments that allegedly underperformed).  These allegations are not levied at the target date funds in which Plaintiffs actually invested, but solely at certain underlying component investments of the target date funds.  Plaintiffs' Complaint fails to state a claim, and should be dismissed, for several reasons, including:

- Plaintiffs' isolated challenge to the fees for the underlying component investments of the target date funds, as opposed to the overall fee structure of the target date funds, is insufficient as a matter of law.  *See, e.g.*, *Sacerdote v.*

1

*New York Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at *11 (S.D.N.Y. Aug. 25, 2017) ("[P]laintiffs' allegations regarding unnecessary and excessive fee[s] are insufficient" because they "have not alleged that the inclusion of investment products with these fees led to higher fees overall" such that "the overall fee structure was unreasonable.").

- Defendants were not acting as ERISA fiduciaries when designing their target date fund products, selecting their product's underlying component investments, and offering them to the retirement plans sponsored by Plaintiffs' employers. *See, e.g.*, *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether . . . that person was acting as a fiduciary . . . when taking the action subject to complaint.").

- Even assuming, contrary to existing law, that Defendants were acting as ERISA fiduciaries, Plaintiffs' claim nevertheless is still foreclosed under Eighth Circuit precedent as "a claim is [not] stated by a bare allegation that cheaper alternative investments exist in the marketplace." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596, n.7 (8th Cir. 2009).

Plaintiffs' Complaint can, and should, be dismissed in its entirety for any one of these reasons.

## **BACKGROUND**

Plaintiff Ashley Nelsen is a participant in the Starkey Laboratories, Inc. ("Starkey") Employee Retirement Plan. Compl. ¶ 25. Plaintiffs Roody Jasmin and Joellyn Williams are participants in the Fleetcor Technologies ("Fleetcor") 401(k) Savings Plan. Compl. ¶¶ 26-27. These plans are just two of the at least 9,000 retirement plans for which Defendants provide services. *See* Compl. ¶ 90. Each plan has independent fiduciaries responsible for administering the plans, selecting investment options to include in the plans, ensuring that the plans' expenses are reasonable, and contracting with companies to provide services to the plans. The plans retained Defendants to provide an integrated, bundled package of services, including "act[ing] as the recordkeeper for . . . the[] plans," *id.*, and providing an array of investment options that the plans and their participants could choose from. Among those investment options were a series of target date fund products offered by Defendants, structured as CITs (the "Principal CITs").

2

CITs are investment vehicles that pool investors' assets and centralize investment management services. Compl. ¶ 2. The Principal CITs hold a variety of component investments, including investments in mutual funds, separate accounts, and other CITs. Compl. ¶ 5. This structure, known as a "fund-of-funds," is common not only among collective investment trusts but also in mutual funds. In a fund-of-funds structure, investment management fees may be charged at the top fund level or on the underlying funds – and in many instances, fees are charged at both levels. *See Jacobs v. Verizon Commcn's, Inc.*, No. 16 Civ. 1082 (PGG), 2017 WL 8809714, at *6-7 (S.D.N.Y. Sept. 28, 2017) (dismissing claim that the defendants breached fiduciary duties by offering fund-of-funds with allegedly "complex" fee structures). As Plaintiffs acknowledge, instead of charging fees at the underlying fund level, Defendants could have charged a higher "fixed overall fee," and "then . . . use[d] that fee to pay the fees associated with the underlying investment options." Compl. ¶ 84. But from an individual participant's perspective, charging at the top fund level (*i.e.*, the CIT) or at the underlying fund level is inconsequential. What does matter is the total fee paid, and whether the total fee is reasonable for that particular fund. *See Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) ("The total fee . . . is the critical figure for someone interested in the cost of including a certain investment in her portfolio and the net value of that investment.") (emphasis added).

As target date funds, the Principal CITs are curated with a particular strategy in mind – to gradually reduce the level of risk in a participant's portfolio as the participant approaches his or her anticipated retirement age. Compl. ¶ 49.[1] It is up to each employer-sponsored 401(k) plan's designated plan administrator, trustee, or other fiduciary (the "plan fiduciary") to decide whether

---

[1] The Department of Labor has made clear that target date funds, in general, are prudent investments. *See Jacobs*, 2017 WL 8809714, at *6 ("The structure of target date funds has been recognized by the U.S. Department of Labor as a prudent structure that can be offered as a qualified default investment alternative.") (citing 29 C.F.R. § 2550.404c-5(e)(4)(i)).

the Principal CITs should be made available to participants in the particular employer's plan, and to approve each underlying Principal fund that the Principal CITs may invest in. *See* Declaration of Angel West ("Declaration"), Ex. A and B (Participation Agreements for Starkey Employee Retirement Plan and Fleetcor 401(k) Savings Plan), §§ 3, 11(a)(iii) ("The Authorizing Fiduciary has selected . . . certain Target Date Funds to be investments of the Participating Trust. . . . By entering into this Agreement, the Authorizing Fiduciary . . . approves the investment of assets of the Participating Trust in the Principal Funds . . . and the Participating Trust's indirect payment of the advisory and other fees of Principal Funds as set forth on Appendix B, in accordance with the terms of . . . PTE 2012-11 . . . ."); Dkt. No. 1-1, § 1.2 (defining "Authorizing Fiduciary" as "a trustee, administrator or other named fiduciary authorized to bind an Eligible Trust in accordance with its governing documents.").[2] *See also Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (USA)*, 768 F.3d 284, 295-96 (3d Cir. 2014) (holding that the plan fiduciary, rather than a service provider, had responsibility for selection of plan investment options); *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 303 (5th Cir. 2007) (explaining structure of 401(k) plans and plan trustees' responsibilities to "manage the plan, select and monitor the investment options, and handle each Participant's account").

Although the Defendants have discretion over how CIT assets are invested among the underlying funds, *see* Dkt. No. 1-1, § 9.1, Defendants do not directly offer the Principal CITs to individual participants like Plaintiffs. Defendants simply make the Principal CITs available to the investment customer (here, the plan fiduciaries) as a "product" – much like they make their recordkeeping services available. It is up to the plan fiduciaries to decide whether they will

---

[2] The participation agreements are referenced in paragraphs 2, 5, 29, 30, 32, 33, 36, 39, 41, and 141 of the Complaint. It is well established that courts "may examine [documents] in our consideration of the 12(b)(6) motion to dismiss, even though [they were] not expressly part of the pleadings, because [they were] incorporated into the pleadings by reference—the complaint specifically mentioned [them] . . . ." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1063, n.3 (8th Cir. 2005).

"purchase" – at the disclosed price – the CIT product that Defendants designed, by making the Principal CITs available as investment options within their 401(k) plans, and approving each of the funds whose assets may be allocated under the Principal CITs.

Service fees for the Principal CITs are collected in accordance with the schedules in the participation agreements entered into between Principal and each plan fiduciary selecting the Principal CITs, including for Fleetcor and Starkey.  *See* Declaration, Ex. A and B.  In addition, each of the underlying investments within the Principal CITs may charge a fee.  Compl. ¶ 81. Before selecting the Principal CITs as investment options for their plans, every plan fiduciary was provided detailed information regarding the fee structure of the Principal CITs.  The information provided to plan fiduciaries in the participation agreements makes clear not only the total fee structure, but also the individual components of the overall fee structure.  *See* Declaration, Ex. A and B at § 11, and pp. 10-14.  After the plan fiduciaries selected the Principal CITs as an investment option, they and their plan's participants, including the named Plaintiffs, received updates regarding fees on a periodic basis.  *See* Declaration, Ex. C and D (ERISA Section 404a-5 Notices to Starkey Employee Retirement Plan and Fleetcor 401(k) Savings Plan).

Plaintiffs do not allege that the overall fees paid for the Principal CITs were excessive, and each of the Principal CITs Plaintiffs invested in substantially outperformed their benchmarks during the class period.  For example, between 2013 and 2017, Plaintiffs' investments in the Principal CITs returned between 0.59% and 1.39% <u>more</u> per year than their respective Morningstar benchmarks.[3]  By contrast, Plaintiffs allege that Defendants should have used alternative index funds that were as little as 0.04% cheaper per year.  *See, e.g.*, Compl. ¶ 106.

---

[3] *See* Declaration, Ex. C at 8 (showing returns for the Principal LifeTime Hybrid 2055 CIT that Plaintiff Nelsen invested in, *see* Compl. ¶ 25), and D at 7, 9 (showing returns for the Principal LifeTime Hybrid 2025 and 2040 CITs that Plaintiffs Williams and Nelsen, respectively, invested in, *see* Compl. ¶¶ 26-27).  This Court may take judicial notice of "participant fee disclosure notices" and consider them at the motion to dismiss stage.  *See, e.g.*, *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1066 (N.D. Cal. 2017).

Tellingly, none of the 9,000 retirement plans which selected the Principal CITs as investment options, or their plan fiduciaries, have sued Defendants regarding the Principal CITs.

The use of a financial services company's proprietary underlying investments, like those used in the Principal CITs, is common in the 401(k) retirement space.   In fact, ERISA specifically anticipates that retirement service providers will want to use their own underlying funds within their investment vehicles.   Section 406 of ERISA prohibits certain categories of transactions believed to pose a higher risk of fiduciary self-dealing and conflicts of interest.   *See* ERISA § 406, 29 U.S.C. § 1106; *Braden*, 588 F.3d at 600-602 (broadly interpreting section 406). Nevertheless, Congress enacted in Section 408 of ERISA conditional exemptions from these prohibited transaction rules, and further delegated authority to the United States Department of Labor ("DOL") to issue administrative class or individual exemptions.   *See generally* ERISA § 408, 29 U.S.C. § 1108.

Defendants applied for and received from the DOL an individual exemption for the Principal CITs.   *See* Exemptions From Certain Prohibited Transaction Restrictions, 77 Fed. Reg. 32,672, 32,673-32,679 (Jun. 1, 2012) ("PTE 2012-11").   PTE 2012-11 allows Defendants to invest some or all of the Principal CITs' assets in underlying Principal funds (and collect underlying fund fees) as long as the fees received by Defendants at the top fund level (*i.e.*, the CIT) and at the underlying fund level do not – in total – exceed more than reasonable compensation.   *See id.*, 77 Fed. Reg. at 32,674.   As part of granting this exemption, the DOL necessarily determined that Defendants' actions would be "in the interests of the plan and its participants and beneficiaries, and . . . protective of the rights of participants and beneficiaries of such plan."   *See* ERISA § 408(a)(2)-(3) (setting forth the requirements for the DOL to grant such an exemption).   Thus, Defendants' decisions in designing and marketing its CITs product took

place against the backdrop of a clearly-established exemption expressly applying to Defendants' conduct.

## **ARGUMENT**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *United States ex rel. Raynor v. Nat'l Rural Utils. Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Boudinot v. Polk County*, No. 4:14-cv-00266, 2014 WL 11320952, *1 (S.D. Iowa July 15, 2014) (Rose, J.) (quoting *Braden*, 588 F.3d at 594). A mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 934 (8th Cir. 2012) ("naked assertions and the like will not pass muster"). On the contrary, the factual allegations must "raise more than a speculative right to relief." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008). And "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Id.*

Plaintiffs' factual allegations are insufficient as a matter of law to support a plausible ERISA breach of fiduciary duty claim for several reasons. First, "plaintiffs' allegations regarding unnecessary and excessive fee[s]" related to isolated underlying component funds of the Principal CITS "are insufficient" because they "have not alleged that the inclusion of investment products with these fees led to higher fees overall" such that "the overall fee structure was unreasonable." *Sacerdote*, 2017 WL 3701482, at *11. Second, Defendants were not acting as ERISA fiduciaries either in the product-design selection of the underlying funds for the

Principal CITs, or in the monitoring and approval of the Principal CITs's fees, and, accordingly, Defendants cannot be sued for breaching ERISA fiduciary duties. *See Pegram*, 530 U.S. at 226 ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether . . . that person was acting as a fiduciary . . . when taking the action subject to complaint."). Third, even if Plaintiffs could challenge (in isolation) the fees associated with particular component funds of the Principal CITs, the Eighth Circuit has held that "a claim is [not] stated by a bare allegation that cheaper alternative investments exist in the marketplace." *Braden*, 588 F.3d at 596, n.7. The Complaint should therefore be dismissed in its entirety.

I.      Plaintiffs Have Not Alleged That The Overall Fee Structure Of The Principal
        CITs Was Too Expensive Or That The Principal CITs Underperformed.

Plaintiffs' sole claim in their one hundred forty-three paragraph Complaint is that Defendants breached their fiduciary duties in violation of section 404(a)(1)(A), (B) and (D) of ERISA. *See* Compl. ¶¶ 135-43. In alleging a breach of fiduciary duty claim, however, Plaintiffs do not allege that the Principal CITs selected by Plaintiffs' plan fiduciaries were too expensive or underperformed. In fact, the Principal CITs over-performed. *See* Declaration, Ex. C and D. In other words, "[t]he investors had no quarrel with paying the disclosed <u>total amount of fees</u> for the services they received in return." *In re AIG Advisor Grp.*, No. 06 CV 1625 (JG), 2007 WL 1213395, at *11 (E.D.N.Y. Apr. 25, 2007) (emphasis added); *see also Castillo v. Dean Witter Discover & Co.*, No. 97 CIV. 1272 (RPP), 1998 WL 342050, at *5 (S.D.N.Y. June 25, 1998) (granting motion to dismiss for failure to state a claim under federal securities law, because while "Plaintiffs complain . . . of the precise allocation of fees . . . [i]t is <u>the total fees</u> charged that would affect the asset value . . . and the decision to invest.") (emphasis added). Simply put, "[t]he total fee . . . is the critical figure for someone interested in the cost of including a certain investment in her portfolio and the net value of that investment." *Hecker,* 556 F.3d at 586

(affirming motion to dismiss for failure to state a claim for breach of fiduciary duty under ERISA) (emphasis added).

While Plaintiffs allege that "the fees of each Principal CIT consisted of four components," they allege only that a portion of one of those components – "fees charged by the underlying investments in the Principal CIT" – were excessive. *See* Compl. ¶¶ 5, 86. Plaintiffs' isolated focus on only one component part of a multi-faceted fee structure is fatal to their claim. By not alleging that the fee structure taken as a whole is excessive, "plaintiffs' allegations regarding unnecessary and excessive fee[s] are insufficient," because they "have not alleged that the inclusion of investment products with these fees led to higher fees overall" such that "the overall fee structure was unreasonable." *Sacerdote*, 2017 WL 3701482, at *11 (granting, in part, motion to dismiss for failure to state a claim for breach of fiduciary duty under ERISA) (emphasis added).

Indeed, the Eighth Circuit recently affirmed Judge Jarvey's dismissal of a lawsuit regarding similar target-date funds offered by Defendants – where, as here, plaintiff "disclaimed a challenge to the excessiveness of the adviser fees," and "[i]nstead, . . . based its excessiveness challenge [only] on . . . fees paid . . . by the [underlying] funds." *See Am. Chems. & Equip. Inc. 401 (K) Ret. Plan v. Principal Mgmt. Corp.*, 864 F.3d 859, 861 (8th Cir. 2017) (affirming dismissal of breach of fiduciary duty claim brought under the Investment Company Act). After a discussion of relevant Securities and Exchange Commission ("SEC") regulations, which were designed to help "investors . . . appreciate the total costs of investing in a fund of funds," Fund of Funds Investments, 68 Fed. Reg. 58,226, 58,234 (proposed Oct. 8, 2003) (emphasis added), the Eighth Circuit described plaintiff's attempt to limit its challenge to a portion of the total costs as

9

a "convoluted claim," which did not state a cause of action.  *See Am. Chems. & Equip. Inc. 401 (K) Ret. Plan*, 864 F.3d at 862-63.

So too, the DOL has issued rules emphasizing the need to focus on a fund's "total annual operating expenses," Fiduciary Requirements for Disclosure in Participant-Directed Individual Account Plans, 75 Fed. Reg. 64,910, 64,923 (Oct. 20, 2010) (emphasis added), of which expenses attributable to underlying funds are only one component.  *See* DOL Field Assistance Bulletin No. 2012-02R, at Q31 (July 30, 2012) (explaining that, in a "fund-of-funds," expenses attributable to the "underlying funds" are one of the component expenses that are included in the relevant "total annual operating expenses").[4]  Moreover, the DOL has repeatedly conditioned exemptions from ERISA's prohibited transaction rules on whether the "total of all fees" is reasonable, including in granting Defendants an individualized exemption governing the Principal CITs for the very circumstances at issue in this lawsuit, *see* PTE 2012-11, 77 Fed. Reg. at 32,674 (emphasis added), and "emphasize[d] that it expects the plan fiduciary with investment management responsibility to consider the totality of fees to be paid by the plan directly, and/or indirectly through [plan investments]."  DOL Advisory Opinion 1993-13A at 4, n.5 (Apr. 27, 1993) (emphasis added).[5]

II.   **Defendants Were Not Acting As ERISA Fiduciaries Either In The Product-Design Selection Of The Underlying Funds For The Principal CITs Or In The Monitoring And Approval Of The Principal CITs' Fees.**

"In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether . . . that person was acting as a fiduciary . . . when taking the action subject to complaint."  *Pegram*, 530 U.S. at 226.  The Complaint is clear that "Defendants' fiduciary

---

[4] Available at https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/field-assistance-bulletins/2012-02r.

[5] Available at https://www.dol.gov/sites/default/files/ebsa/employers-and-advisers/guidance/advisory-opinions/1993-13a.pdf.

breaches in this case relate entirely to . . . the selection and monitoring of the Principal CITs' underlying investment options." Compl. ¶ 8. But it is well-settled that Defendants' establishment of the Principal CITs and the selection of "which mutual funds to include and which share classes of those funds to select" is a "product-design decision[]," not a fiduciary decision. *See Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 911-12 (7th Cir. 2013); *see also Fleming v. Fid. Mgmt. Tr. Co.*, No. 16-CV-10918-ADB, 2017 WL 4225624, at *5 (D. Mass. Sept. 22, 2017) ("deciding which share classes of mutual funds would be made available . . . is a 'product design' decision"); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 718 F. App'x 3, 5 (2d Cir. 2017) ("The initial, pre-contractual design of the investment menu is not considered discretionary authority with respect to a plan under ERISA.").

As to Defendants' fiduciary duty to monitor the types of investments being made by the Principal CITs, Plaintiffs do not allege that Defendants breached their fiduciary duty with respect to asset allocation or investment strategy. *See, e.g.*, Compl. ¶¶ 10 ("Plaintiffs do not challenge either the decision to use passive investments for these asset classes or the index used to represent each asset class."), 91 ("Plaintiffs . . . do not raise any allegations related to the asset allocation used by Defendants . . . ."). Rather, Plaintiffs allege instead that Defendants selected "identical investments" to those that would have been prudent, and allegedly kept the "higher-fee versions . . . to increase fee revenue." Compl. ¶ 15. Even if Plaintiffs had adequately pleaded facts to support such a claim – and they clearly have not under controlling Eighth Circuit precedent, *see infra* § III – Plaintiffs' allegations would depend on Defendants having a fiduciary duty to reduce fees by investing the Principal CITs' assets in less-expensive underlying funds. But the fees were charged at rates expressly agreed to by Plaintiffs' plan fiduciaries, who entered into participation agreements governing the plans' participation in the Principal CITs, including

the authorization of the fee structure of the Principal CITs. *See* Declaration, Ex. A and B. Allowing those "who knowingly agreed to a fee structure [to] nonetheless later sue to lower it," would be an "absurd result[]." *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 838-39 (9th Cir. 2018) (reversing district court's denial of a motion to dismiss for failure to state a claim for breach of fiduciary duty under ERISA, involving, *inter alia*, allegations that defendants "fail[ed] to invest in the lowest priced share class of the mutual funds that underlie the separate account investment options"); *see also McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 (8th Cir. 2016) ("Because Principal did not owe plan participants a fiduciary duty while negotiating the fee terms with McCaffree, Principal could not have breached any such duty merely by charging the fees described in the contract that resulted from that bargaining.").

III.     Even If Defendants Were Acting As Fiduciaries, Plaintiffs' Bare Allegations That Cheaper Alternative Investments Were Available Are Insufficient To State A Plausible ERISA Breach Of Fiduciary Duty Claim.

This Court need not address Plaintiffs' allegations of purported breaches of fiduciary duty with respect to isolated components of the Principal CITs. As discussed above: (i) Plaintiffs have not made any allegations about the performance or expenses of the Principal CITs, which are the investments actually offered to Plaintiffs, *see supra* § I; and (ii) Defendants were not acting as fiduciaries in the product-design selection or in the monitoring and approval of the Principal CITs' fees, *see supra* § II. But even if this Court were to address Plaintiffs' allegations that certain of the underlying funds included in the Principal CITs were more expensive than other funds that could have been used, those allegations are insufficient to state a claim for breach of fiduciary duty. *See Braden*, 588 F.3d at 596, n.7 ("[A] claim is [not] stated by a bare allegation that cheaper alternative investments exist in the marketplace.").

In particular, Plaintiffs allege that there were cheaper alternative: (i) index funds that could have been used, *see* Compl. ¶¶ 92-112; (ii) annuity separate accounts that could have been

used, *see* Compl. ¶¶ 115-122; and (iii) share classes that could have been used, *see* Compl. ¶¶ 123-24.   As discussed in more detail below, courts have rejected each of these attempts to circumvent *Braden*'s pleading requirements and held that there are legally valid reasons not to use each of the alternative investments that Plaintiffs baldly insist must be used.   Moreover, "[i]n evaluating whether a fiduciary has acted prudently, we . . . focus on the process by which it makes its decisions rather than the results of those decisions," *Braden,* 588 F.3d at 595, and Plaintiffs readily admit that they do not have any "knowledge of the specifics of Defendants' decision-making process."   Compl. ¶ 125.   Accordingly, Plaintiffs must make sufficient plausible allegations for this Court to <u>infer</u> an imprudent process, which Plaintiffs have not done, particularly given the context of a CIT whose investment strategy the DOL expressly approved in PTE 2012-11.   Allegations of an imprudent process are "not plausible if the facts [plaintiff] points to are precisely the result one would expect from lawful conduct."   *Braden*, 588 F.3d at 597.   That is, "a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition."   *Id.* at 598.   Plaintiffs have not done so here.

> A.      Plaintiffs' Allegations That Cheaper Index Funds Were Available Do Not State A Plausible Claim.

Plaintiffs allege that Defendants invested in four index funds which were supposedly unreasonably expensive: three stock index funds (an S&P 500 index fund for large cap stocks, an S&P 400 index fund for mid cap stocks, and an S&P 600 index fund for small cap stocks), and one bond index fund.   *See generally* Compl. ¶¶ 92-112.   Plaintiffs' allegations in this respect are meritless.   As an initial matter, Plaintiffs cite repeatedly to a report from Mercer (a leading employee benefits consulting firm) for the propositions that Defendants' "index funds have consistently had among the highest tracking error among all index fund managers," and that Defendants were "institutionally [inferior to their] competitors in the field of . . . index tracking."

*See*, *e.g.*, Compl. ¶¶ 96, 100.[6]  In reality, that report – which analyzed the same four styles of index funds that are components of the Principal CITs and which Plaintiffs attempt to put at issue in this lawsuit – determined that Defendants were one of only <u>three</u> investment managers out of "over <u>5,300</u> investments managers" that <u>passed</u> Mercer's screening process with respect to <u>all four index funds</u>.  *See* Mercer Report at 1, 6-7, 20-21, 34-35, 48-50 (emphasis added).

Further, Plaintiffs allege that all of Defendants' stock index funds' expense ratios were 0.06%.  *See* Compl. ¶¶ 98, 106, 109.  An "S&P 500 Index Fund at an expense ratio of .06% . . . [is] as a matter of law, low."  *Divane v. Northwestern University*, No. 16 C 8157, 2018 WL 2388118, at *8 (N.D. Ill. May 25, 2018) (granting motion to dismiss for failure to state a claim for breach of fiduciary duty under ERISA).  Moreover, since "the S&P 500 index fund style has the lowest median expense ratio" among mutual fund categories, *see* John C. Coates IV & R. Glenn Hubbard, *Competition in the Mutual Fund Industry: Evidence and Implications for Policy*, 33 J. Corp. L. 151, 193 (2007), generally more expensive funds (*e.g.*, mid-cap and small-cap funds) which have the same low price of 0.06% must also be "as a matter of law, low."  In fact, Plaintiffs' only identified "low-cost" alternative to Defendants' S&P 600 Small Cap Index Fund at 0.06% is a Vanguard S&P 600 Small Cap Index Fund that is actually more expensive, at 0.08%.  *See* Compl. ¶ 109.[7]

---

[6]   This report (the "Mercer Report") is available at http://per.lacity.org/deferredcomp/BR15-10ATTACHMENTCityOfLA-PassiveSearchesFinal.pdf.  *See* Compl. ¶ 96, n. 25.

[7]   While Plaintiffs allege that Defendants' index fund tracking the "Bloomberg Barclays U.S. Aggregate Bond Index," had an expense ratio of 0.15%, Compl. ¶ 102, courts have held at the motion to dismiss stage that bond index funds tracking the same index, with an expense ratio as high as 0.32%, are still "low-cost."  *Renfro v. Unisys Corp.*, No. CIV.A.07-2098, 2010 WL 1688540, at *6 (E.D. Pa. Apr. 26, 2010) (granting motion to dismiss for failure to state a claim for breach of fiduciary duty under ERISA), *aff'd*, 671 F.3d 314 (3d Cir. 2011);  *see also* Unisys Savings Plan Prospectus, Dkt No. 40-18 at 8, *Renfro v. Unisys Corp.* (E.D. Pa. Dec. 20, 2007) (indicating that the bond index fund at issue in *Renfro* tracked the "Lehman Brothers Aggregate Bond Index"); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1041 n.2 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Apr. 28, 2015) ("The former Lehman Index is now known as the Barclays U.S. Aggregate Bond Index.").

14

By contrast, in *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936 (LGS), 2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) – upon which Plaintiffs rely, *see* Compl. ¶ 56 – plaintiffs alleged that defendants' S&P 500 Index Fund not only had an expense ratio of 0.23% (nearly quadruple the 0.06% at issue here), but that the expense ratio increased every year "from 0.23%, . . . to 0.24%, . . . 0.25%, . . . and finally 0.31%," at which point defendants replaced that fund with a Vanguard S&P 500 Index Fund and attempted to conceal the change.[8] The Court held that plaintiffs had plausibly alleged defendants breached their fiduciary duties "by failing to remove excessively costly . . . proprietary index funds," and that, in particular, defendants' S&P 500 Index Fund "charged fees that were more than eleven times higher than a comparable Vanguard index fund, and . . . this fee differential increased each year." *Moreno*, 2016 WL 5957307, at *6. Here, there are no similar allegations.[9]

Simply put, "[t]he fact that it is possible that some other funds might have had even lower [expense] ratios [than 0.07%] is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker*, 556 F.3d at 586. The possibility that Plaintiffs' proposed alternative funds could have "other problems" is no mere hypothetical. For example, in down markets, many of Plaintiffs' proposed alternative fund management companies have been sued for breach of fiduciary duty under ERISA with respect to their practice of engaging in securities

---

[8] First Amended Class Action Complaint, *Moreno v. Deutsche Bank Americas Holding Corp.*, 2016 WL 1714561 (S.D.N.Y. Mar. 30, 2016), ¶¶ 75-81.

[9] Nor is there any general duty to use Vanguard funds just because they may be less expensive. *See, e.g.*, *Meiners v. Wells Fargo & Co.*, No. CV 16 3981(DSD/FLN), 2017 WL 2303968, at *3 n.4 (D. Minn. May 25, 2017) (granting motion to dismiss for failure to state a claim for breach of fiduciary duty under ERISA, and holding that "any value that [plaintiff's] comparison does have is lessened by the fact that Vanguard is a low-cost fund. *See Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345 (2d. Cir. 2006) ('That a mutual fund has an expense ratio higher than Vanguard, a firm known for its emphasis on keeping costs low, raises little suspicion . . . .')").

lending with their clients' retirement plan assets.[10]   Although securities lending has its risks, it

can be profitable – and "[t]he amount that the plan receives [from securities lending] can serve to

offset custody fees and administrative expenses,"[11] thus resulting in lower expense ratios for

funds that engage in more profitable (and risky) securities lending.

Plaintiffs have not alleged that the difference in expense ratios is attributable to anything

other than differences in securities lending revenue.[12]   In fact, the Mercer Report indicates that

Defendants are the only index fund provider Plaintiffs identify that fully replicates the stock

market indices without securities lending.   *See* Mercer Report at 24, 37, 52.   But even had

Plaintiffs plausibly alleged no relevant differences of any kind, their allegations would still miss

the mark.   The law is clear that there is no fiduciary obligation to "scour the market to find . . .

the cheapest possible fund," and/or then determine whether it is "plagued by other problems,"

*see Hecker*, 556 F.3d at 586, particularly where, as here, the underlying index funds included in

the Principal CITs offered to the plans already had expense ratios that were, "as a matter of law,

low."   *See Divane*, 2018 WL 2388118, at *8.   Moreover, Defendants were already familiar with

and controlled the operation of their own index funds, and both Congress and the DOL have

"recognized . . . that it would be contrary to normal business practice for a company whose

---

[10] *See, e.g.*, Compl. ¶ 93; *Bd. of Trustees of S. California IBEW-NECA Defined Contribution Plan v. Bank of New York Mellon Corp.*, No. 09 CIV. 6273 RMB, 2011 WL 6130831 (S.D.N.Y. Dec. 9, 2011); *Diebold ex rel. ExxonMobil Sav. Plan v. N. Tr. Invs., N .A.*, No. 09 C 1934, 2010 WL 3700387 (N.D. Ill. Sept. 7, 2010); *Fishman Haygood Phelps Walmsley Willis & Swanson, L.L.P. v. State St. Corp.*, No. CIVA 1:09-10533-PBS, 2010 WL 1223777 (D. Mass. Mar. 25, 2010).

[11] Statement of Charles A. Jeszeck, Acting Director, Education, Workforce and Income Security, *401(K) Plans Issues Involving Securities Lending in Plan Investments* (Special Committee on Aging, U.S. Senate, Mar. 16, 2011) at 15, available at https://www.gao.gov/assets/130/125767.pdf.   Courts have taken judicial notice of the report on which this testimony was based, *see id.* at 1-2, n.4, and *infra* n. 13, as well as other Congressional testimony by the Government Accountability Office.   *See, e.g.*, *Oregon State Bar Prof'l Liab. Fund v. U.S. Dep't of Health & Human Servs.*, No. 03:10-CV-1392-HZ, 2012 WL 1071127, at *3 (D. Or. Mar. 29, 2012).   Such materials may be considered "in determining whether a complaint states a claim."   *Williams v. Lew*, 819 F.3d 466, 473 (D.C. Cir. 2016) (alterations omitted).

[12] Nor do Plaintiffs allege any obligation under ERISA to attempt to maximize securities lending revenue (in exchange for taking on more risk).

business is financial management to seek financial management services from a competitor." Participant Directed Individual Account Plans, 56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991).

Plaintiffs do not save their insufficient pleading by reference to the Principal CITs' "tracking error." *See, e.g.*, Compl. ¶¶ 58, 96. "There will always be a gap between the S&P 500 and an index fund that tries to approximate the returns of the S&P 500 . . . . This gap, also known as 'tracking error,' is caused by, among other things, fund expenses . . . that the index itself would not have. These index funds may try to decrease the gap by earning greater return on the stocks they hold by temporarily lending out the securities . . . ." *401(K) Plans Certain Investment Options and Practices That May Restrict Withdrawals Not Widely Understood*, Report of United States Government Accountability Office (Mar. 2011).[13] Not only does the Mercer Report indicate that Defendants are the only index fund provider Plaintiffs identify that fully replicates the stock market indices without securities lending, *see* Mercer Report at 24, 37, 52, but there has never been an ERISA case which held the selection or retention of an index fund to be a breach of fiduciary duty based (in whole or in part) on the fact that other funds had slightly lower tracking error. Indeed, allowing Plaintiffs to transform their legally insufficient expense allegations into a viable claim – just by looking at expenses through the lens of tracking error – would render the Eighth Circuit's holding in *Braden* meaningless.

Moreover, Plaintiffs' speculation that the index funds' tracking error is partially attributable to holding too much cash (which Plaintiffs derisively refer to as "cash drag"), *see* Compl. ¶ 59, is not actionable under ERISA. *See Barchock v. CVS Health Corp.*, 886 F.3d 43, 44 (1st Cir. 2018) (affirming dismissal for failure to state a claim where plaintiffs alleged that "a particular investment fund offered through the plan was invested too heavily in cash or cash-

---

[13] Available at https://www.gao.gov/assets/320/316437.pdf. Courts have taken judicial notice of the accuracy of the facts described in this report. *See White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2017 WL 2352137, at *5 (N.D. Cal. May 31, 2017); *see also supra* n. 11.

equivalents"); *see also Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 859-60 (8th Cir. 1999) (questioning, without deciding, whether a "fiduciary duty . . . can be breached by maintaining an investment portfolio that is *too safe and conservative*").  It was in Defendants' sole discretion here to construct a safer and more conservative portfolio by holding a portion of the investments in cash.  *See* Dkt No. 1-1, § 3.6 ("The Trustee in its sole discretion may keep such portion of the Funds in cash . . . as it . . . considers advisable.").

B.     Plaintiffs' Allegations That Cheaper Annuity Separate Accounts Were Available Do Not State A Plausible Claim.

Plaintiffs also allege that instead of selecting a "mutual fund . . . Defendants could have . . . selected the exact same investment in annuity separate account form."  Compl. ¶ 18.  In making this and similar arguments, Plaintiffs rely on the Ninth Circuit's holding in *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016), that: "a trustee cannot ignore the power the trust wields to obtain favorable investment products, particularly when those products are substantially identical—other than their lower cost—to products the trustee has already selected."  *See* Compl. ¶ 17.  What matters in the context of the Principal CITs, however, is <u>not</u> the individual expenses associated with each underlying investment, but rather the <u>total fees</u> participants paid for investing in the Principal CITs.  *See supra* § I.

Further, even if the Court were to analyze Plaintiffs' allegations regarding separate accounts on their face, any comparison between mutual funds and separate accounts would be an apples-to-oranges comparison.  Courts have dismissed such allegations at the motion to dismiss stage because the use of mutual funds instead of separate accounts is not "suggestive of imprudent action."  *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *12 (N.D. Cal. Aug. 29, 2016) ("It is inappropriate to compare distinct investment vehicles solely by cost, since their essential features differ so significantly.  In particular, mutual funds have unique

regulatory and transparency features, which make any attempt to compare them to investment vehicles such as collective trusts and separate accounts an 'apples-to-oranges comparison.'") (quoting *Tibble v. Edison Int'l*, 729 F.3d 1110, 1134 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823 (2015)).[14]

Plaintiffs, however, claim that "the mutual fund structure of an underlying fund confers no benefit upon investors in a fund-of-funds CIT, because such investors lack standing to enforce [Investment Company Act] provisions. *Amer. Chem. & Equip. Inc. 401(k) Retirement Plan v. Principal Mgmt. Corp.*, 864 F.3d 859, 865 (8th Cir. 2017)." Compl. ¶ 67. Even assuming Plaintiffs' broad interpretation of the Eighth Circuit's decision is correct, the decision makes clear that "the . . . directors of each fund . . . still have responsibility to [comply with Investment Company Act provisions] . . . and the SEC would have authority to sue the investment adviser of any fund . . . ." *Am. Chems. & Equip. Inc. 401 (K) Ret. Plan*, 864 F.3d at 864. Indeed, Plaintiffs acknowledge that "CITs . . . unlike mutual funds, . . . are not covered by the Investment Company Act . . . and . . . are not subject to SEC . . . oversight requirements provided by the [Investment Company] Act." Compl. ¶ 45. Since "the purpose and structure of the entire [Investment Company] Act is grounded upon enforcement by the SEC, not on private enforcement," *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1108 (9th Cir. 2010), it is nonsensical to argue that its benefits depend exclusively on private enforcement.

---

[14] *See also Renfro v. Unisys Corp.*, 671 F.3d 314, 318-19, 326 (3d Cir. 2011) (rejecting argument that "the fees on the mutual fund options are excessive . . . as compared . . . to other types of investments [that] could have [been] . . . inclu[ded] in the plan," and explaining that mutual funds "are subject to a variety of reporting, governance, and transparency requirements that do not apply to other investment vehicles," and noting that "plan participants appear to strongly prefer mutual fund investments"); *Abbott v. Lockheed Martin Corp.*, No. 06-CV-0701-MJR, 2009 WL 839099, at *5-6 (S.D. Ill. Mar. 31, 2009) (rejecting argument that a "failure to consider a separate account was a breach of . . . fiduciary duty," because "non-fee considerations weighed in favor of maintaining the mutual fund structure . . . including SEC oversight and review, better access to information showing returns, [and] greater familiarity and portability. . . . No statute or regulation requires a finding . . . [of] impruden[ce] in offering . . . a mutual fund rather than a separate account, and certain benefits flowed from that decision.").

      C.     Plaintiffs' Allegations That Cheaper Share Classes Were Available Do Not State A Plausible Claim.

Plaintiffs further allege that "Defendants . . . failed to use the least expensive share class," for certain underlying funds included in the Principal CITs.  *See* Compl. ¶ 20.  Importantly, Plaintiffs' argument ignores that the total fees Principal charged were approved by plan sponsors, and are not alleged to be unreasonable, further distinguishing this case from others such as *Tibble*.  *See supra* § I.  Moreover, "[c]ourts have dismissed claims that fiduciaries are required to offer institutional-class over retail-class funds, and claims that fiduciaries were imprudent in failing to offer cheaper funds."  *White*, 2016 WL 4502808, at *10; *see also Sacerdote*, 2017 WL 3701482, at *11 ("Plaintiffs have identified funds for which NYU included a higher-cost share class in the Plans instead of an identified available lower-cost share class of the 'exact same mutual fund option.'  But this does not constitute evidence of imprudence.  As the court noted in *Loomis*, prudent fiduciaries may very well choose to offer retail class shares over institutional class shares (presumably even where, as here, both versions have identical portfolio managers, underlying investments, and asset allocation), because retail class shares necessarily offer higher liquidity than institutional investment vehicles.") (citations omitted).

Indeed, in *Braden*, the Eighth Circuit specifically addressed allegations regarding the use of "retail class shares" instead of "institutional class shares of mutual funds," *Braden*, 588 F.3d at 595, and made clear that "we do not suggest that a claim is stated by a bare allegation that cheaper investment alternatives exist in the marketplace."  *Id.* at 596, n.7.  While the Eighth Circuit reversed the district court's dismissal of the case, it was clear that it was not doing so merely because of the use of retail share classes, but instead only because of "the totality of the specific allegations in this case."  *Id.*  These allegations included that: (i) "seven of the Plan's ten funds charge 12b–1 fees from which participants derive no benefit;" (ii) "the funds included in

the Plan made revenue sharing payments to the trustee, Merrill Lynch, and that these payments were not made in exchange for services rendered, but rather were a quid pro quo for inclusion in the Plan" that the Plan did not disclose and which were "prohibited transactions" under ERISA; (iii) "the Plan offers only retail class shares to participants," and (iv) "considered as a whole, the complaint's allegations can be understood to assert that the Plan includes a relatively limited menu of funds." *Id.* at 595-96.  Plaintiffs do not make any of those allegations here.

This Court is bound to apply *Braden* (as the district courts in *White* and *Sacerdote* did), even though some district courts have – contrary to *Braden* – allowed allegations regarding cheaper share classes to proceed past a motion to dismiss.  For example, in *Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 115CV02062TWPMPB, 2017 WL 1091248, at *4 (S.D. Ind. Mar. 23, 2017), the district court allowed such a claim to proceed, without addressing *Braden*.  And, in *Kruger v. Novant Health, Inc.*, 131 F. Supp. 3d 470, 476-78 (M.D.N.C. 2015), the district court – on distinguishable facts from the case at bar – partially misread *Braden*.  At issue in *Kruger* was a plan where the fees "range[d] from 0.425 to 1.51%, a notably different range from that offered in *Hecker* and related cases,"[15] and which "offered only retail class shares."[16]  *Kruger*, 131 F. Supp. 3d at 476.  While the district court in *Kruger* correctly noted that the absence of any institutional share classes was necessary to *Braden*'s holding, it bizarrely concluded that "[t]he *Braden* court did not require the kickback allegation to survive a motion to dismiss."  *Kruger*, 131 F. Supp. 3d at 477.  *But see Loomis v. Exelon Corp.*, 658 F.3d 667, 670-71 (7th Cir. 2011) ("[In] contrast [to *Hecker*], the plaintiffs in *Braden* alleged that the plan sponsor limited participants' options to ten funds as a result of kickbacks; while adopting the

---

[15] Here, the range of fees is nearly identical to *Hecker*, *see generally* Declaration, Ex. C and D, and thus, "notably different" from *Kruger*.
[16] Here, Plaintiffs make no such allegations.

approach of *Hecker,* the [E]ighth [C]ircuit held this allegation sufficient to state a fiduciary claim under ERISA.").[17]

       D.      **Plaintiffs Cannot Circumvent *Braden*'s Pleading Requirements By Also Alleging A Breach Of The Duty Of Loyalty.**

Plaintiffs cannot circumvent the rule that "a claim is [not] stated by a bare allegation that cheaper alternative investments exist in the marketplace," *Braden*, 588 F.3d at 596, n.7, simply by alleging a breach of the duty of loyalty in addition to a breach of the duty of prudence. *See Meiners*, 2017 WL 2303968, at *3 ("[Plaintiff] argues that he has alleged that Wells Fargo acted in self-interest by choosing higher-cost affiliated funds over lower-cost non-affiliated funds. . . . This, in effect, attempts to hold Wells Fargo liable for failing to choose the cheapest fund.  If such allegations were sufficient to survive a motion to dismiss, it would render fiduciaries liable to suit for failing to choose the cheapest, non-affiliated fund . . . ."); *Rosen*, 718 F. App'x at 7 (holding that "an allegation that a service provider failed to offer a lower fee investment option does not plausibly state a claim for breach of the duty of prudence," and that "recycl[ing] allegations [to sound in disloyalty] cannot meet our pleading standard, which demands that to state a loyalty-based claim under ERISA, a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts.") (internal quotations and alterations omitted).

Moreover, it is impermissible for "a breach of loyalty [to] be presumed from the mere fact that [Defendants] . . . followed . . . a practice . . . [that] Congress intended to approve by enacting the [prohibited transaction] exemptions." *Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337-CIV.-JORDAN, 2007 WL 2263892, at *45 (S.D. Fla. Aug. 7, 2007), *as amended* (Aug. 10,

---

[17] The errors by the district courts in *Bell* and *Kruger* have infected some subsequent district court opinions. *See Tracey v. Massachusetts Inst. of Tech.*, No. CV 16-11620-NMG, 2017 WL 4453541, at *11 (D. Mass. Aug. 31, 2017), *report and recommendation adopted in part, rejected in part*, No. CV 16-11620-NMG, 2017 WL 4478239 (D. Mass. Oct. 4, 2017) (relying on *Bell*); *Main v. Am. Airlines Inc.*, 248 F. Supp. 3d 786, 793-94 (N.D. Tex. 2017) (relying on *Kruger*, and disregarding, without explanation, the specific factual allegations present in *Kruger* on which the district court in *Kruger* relied); *Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2017 WL 4358769, at *8 (S.D.N.Y. Sept. 29, 2017) (similarly erring with respect to *Kruger*).

2007).  As discussed above, the DOL granted Defendants an individual prohibited transaction exemption that covers the precise conduct of which Plaintiffs complain.  *See* PTE 2012-11; *see also Dupree*, 2007 WL 2263892, at *45 ("There is no reason to think that Congress believed the transactions to which it gave statutory exemptive relief . . . were any less beneficial to plans and participants than those approved by the Secretary.");  *Brotherston v. Putnam Investments, LLC*, No. CV 15-13825-WGY, 2017 WL 2634361, at *3 (D. Mass. June 19, 2017) (holding that it is not "sufficient merely to point to a defendant's . . . investment of plan assets in their own mutual funds").[18]

IV.     Plaintiffs Have Not Plausibly Alleged Loss Causation.

One of the required elements of a breach of fiduciary duty claim under ERISA is that there must be a "loss[] to the plan resulting from [the] breach."  ERISA § 409, 29 U.S.C. § 1109; *see also Walsh v. Principal Life Ins. Co.*, 266 F.R.D. 232, 257 (S.D. Iowa 2010) ("it is clear that causation is a necessary element of an ERISA breach of fiduciary duty action").  Importantly, "[a] breach of fiduciary duty 'does not automatically equate to causation of loss and therefore liability.'"  *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 361 (4th Cir. 2014).  Although the Supreme Court has been clear that a mere "formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555, that is all Plaintiffs offer here – stating in wholly conclusory terms that Defendants' "failure" to "remove[] these proprietary index funds from the Principal CITs . . . has cost participants millions in investment losses compared to what they would have earned."  Compl. ¶ 13.  Plaintiffs do not and cannot plausibly allege that any purported loss is directly attributable to Defendants' actions rather than the intervening decisions of: (i) Plaintiffs' retirement plans and their employer fiduciaries to approve and keep the

---

[18] While both *Brotherston* and *Dupree* were decided at summary judgment rather than on motions to dismiss, both involved disputes over whether a prohibited transaction exemption applied.  By contrast, Plaintiffs have not alleged any prohibited transaction claims.

Principal CITs as investment options in their plans; and (ii) Plaintiffs to select and keep the Principal CITs as their preferred investment among the variety of investments offered in their retirement plans.  Plaintiffs also do not allege any facts to suggest that the overall costs charged to the plans would have been lower if less expensive underlying funds were used.

V.      Plaintiffs' Claim Is At Least Partially Barred By The Applicable Statute of Limitations.

A breach of fiduciary duty claim under ERISA is generally subject to a six-year statute of limitations period.  *See* ERISA § 413, 29 U.S.C. § 1113.[19]  Plaintiffs recognize that any actions taken more than six years ago are time-barred, as they filed this lawsuit on April 16, 2018, with a proposed class period beginning "at any time on or after April 16, 2012."  Compl. ¶ 127.  But "the Principal CITs" were "[l]aunched in 2009" and "have, since their inception, used a fund-of-funds investment structure in which the assets of the Principal CIT are invested in other pooled investment vehicles," which "at all relevant times . . . have all had between 60 and 70 percent of their total assets invested in the[] four index funds . . . [and] have consisted of a mix of mutual fund, annuity separate account, and collective investment trust vehicles."  Compl. ¶¶ 2, 77, 88-89.  The only allegation regarding selection of underlying funds within the six-year limitations period is that "[i]n 2013, Defendants replaced the BNY Mellon bond index CIT with the Principal Bond Index fund."  Compl. ¶ 105.  Therefore – with the possible exception of the bond index fund – Plaintiffs' claim is time-barred insofar as it is "challenging the initial selection of the . . . funds."  *See David v. Alphin*, 704 F.3d 327, 340 (4th Cir. 2013).

**<u>CONCLUSION</u>**

For the foregoing reasons, the Complaint should be dismissed in its entirety.

---

[19] While the six-year limitations period can be extended "in the case of fraud or concealment," *id.*, there are no allegations of fraud or concealment here.

Dated:  June 25, 2018                    Respectfully submitted,

/s/ *Angel A. West*
Angel A. West                    AT0008416
Leslie C. Behaunek              AT0011563
NYEMASTER GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, Iowa  50309-3899
Telephone: (515) 283-3127
Facsimile: (515) 283-3108
Email: aaw@nyemaster.com
            lcbehaunek@nyemaster.com

Lars C. Golumbic*
Steve M. Saxon*
Samuel I. Levin*
Sarah L. Martin*
GROOM LAW GROUP
1701 Pennsylvania Ave, NW
Washington, DC 20006
Telephone: (202) 8570620
Facsimile: (202) 659-4503
E-mail: smartin@groom.com
            slevin@groom.com
            sms@groom.com
            lgolumbic@groom.com
* *Admitted Pro Hac Vice 05/18/2018*

**ATTORNEYS FOR DEFENDANTS
PRINCIPAL GLOBAL INVESTORS TRUST
COMPANY; DELAWARE CHARTER
GUARANTEE & TRUST COMPANY d/b/a
PRINCIPAL TRUST COMPANY; PRINCIPAL
GLOBAL INVESTORS, LLC; and PRINCIPAL
MANAGEMENT CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>June 25, 2018,</u> I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the parties participating in the Court's electronic filing system.


Jill M. Zwagerman
NEWKIRK ZWAGERMAN LAW FIRM
521 East Locust Street, Suite 300
Des Moines, IA 50309
Telephone: 515-883-2000
Facsimile: 515-883-2004
E-mail: jzwagerman@newkirklaw.com

Kai H. Richter
Paul J. Lukas
Carl F. Engstrom
Brandon T. McDonough
NICHOLS KASTER, PLLP
80 South Eighth Street
4600 IDS Center
Minneapolis, MN 55402
Telephone:  (612) 256-3200
Facsimile:  (612) 338-4878
E-mail: krichter@nka.com
        lukas@nka.com
        cengstrom@nka.com
        bmcdonough@nka.com

**ATTORNEYS FOR PLAINTIFFS**


                                        /s/*Angel A. West*